## THE STATE OF KANSAS v. FRED. MILLER.

1. ROBBERY *of Money from Person, What is.*  To constitute the crime of robbery by forcibly taking money from the person of its owner, it is not necessary that violence to the person of the owner should precede the taking of the money; it is sufficient if it be contemporaneous with the taking.

2. INSTRUCTION, *Construed* — *"Taken."*  Where the court charged in substance that the violence to the person of the owner of the money must have been with intent to rob, and that the money must have been "obtained from the money drawer" in the presence of the owner, by means of force and violence to his person and against his will, *held,* that, under the facts of this case, the word "obtained" fairly expressed the same idea as the word "taken," and that no error was committed by the use of the word.

### *Appeal from Douglas District Court.*

THE opinion herein, filed May 5, 1894, contains a sufficient statement of the facts.

*Spangler & Brownell,* and *G. W. Ellis,* for appellant.

*John T. Little,* attorney general, *S. D. Bishop,* county attorney, and *A. C. Mitchell,* for The State.

The opinion of the court was delivered by

ALLEN, J.: The defendant was prosecuted and convicted in the district court of Douglas county of the crime of rob-

bery, and sentenced to confinement at hard labor in the penitentiary for 10 years. He appeals from the judgment. It appears from the bill of exceptions that the state introduced testimony tending to prove the following facts:

"That on the evening of the 26th day of August, 1893, the defendant came into the laundry of the complaining witness, at about 10 o'clock at night, to get a shirt he had left there, and laid the check for the shirt down on the counter, which the complaining witness took up, and got the shirt, and laid it on the counter; that the defendant then took out a quarter and laid it on the counter; that the complaining witness took the quarter and put it in the money drawer, and took out 5 cents in change, and laid it on the counter; that the defendant then reached over the counter and grabbed the money of the complaining witness in the drawer; that thereupon the complaining witness caught his hand containing the money, and then the defendant said, 'Let go of me, you son of a bitch;' and the defendant then cut the complaining witness on the hand with a knife; that the complaining witness then let go of him, and the defendant ran to get out of the door; that the complaining witness ran around the counter and caught the defendant by the coat as he went out of the door, and then the defendant turned and cut the complaining witness with a knife across here [the complaining witness indicating his abdomen]; that the complaining witness let go of him, and that the defendant then ran down the alley with the money."

The defendant denied reaching into the money drawer and taking any money.

The claim of error is based on the refusal of the court to give two instructions which were asked by the defendant, viz.:

"2. The court instructs the jury that, if they believe from the evidence that the defendant did not assault the complaining witness until after he had snatched the money from the money drawer, they cannot find him guilty as charged in the nformation.

"3. The court instructs the jury that, to constitute the crime of robbery, under the statute, the violence to the person of the complaining witness must have been applied prior to the taking of the money, and, unless they so find, they must acquit."

The court, after reading to the jury the section of the statute on which the prosecution was based, and the information, charged the jury as follows:

"3. To this information the defendant has pleaded not guilty, and upon the issue so made, before he can be convicted, you must be satisfied from the evidence beyond a reasonable doubt that in this county, at or about the time charged, the defendant feloniously took from the money drawer of Jung Seung, in the presence of Jung Seung, and by force and violence to the person and against the will of Jung Seung, the bank bills described in the information, the property of Jung Seung, with intent to rob him of the same, as charged in the information.

"4. To make out the offense of robbery, the violence to the person as charged must have been done by the defendant with felonious intent, that is, with the intent thereby to rob Jung Seung of his money, and the money must have been obtained from the money drawer in the presence of Jung Seung by means of such force and violence to his person and against his will, as charged."

"10. If the jury find from the evidence that the defendant snatched the bills described from the drawer, and ran off with them, intending to deprive the owner of the same without his consent, and against his will, but without obtaining them by violence to his person, he may be convicted of larceny. It would not be robbery, however, unless the bills were obtained by violence to the person of the prosecutor. When property of the value of $20 or more is stolen, it is grand larceny. Where it is of less value than $20, it is petty larceny."

To these instructions the defendant excepted. The contention on behalf of the appellant is, that the violence used by the defendant was merely for the purpose of breaking away from the complaining witness, and that, if the defendant took the money, he had it in his possession before any struggle took place. Numerous authorities are cited, and some of them perhaps give countenance to the proposition contained in the third instruction asked by the defendant, that the violence must precede the taking, but this we think has no

support in reason, nor by any well-considered authority. The violence to the person and the taking may certainly be contemporaneous. We are not inclined to question the correctness of those cases which hold that robbery is not committed where the thief gains peaceable possession of the property, and uses no violence except to resist arrest or to effect his escape. The evidence adduced at the trial is not before us. We have only a meager statement in a bill of exceptions, quoted above, as to what was shown by the evidence. The statement is, that the defendant reached over the counter and grabbed the money in the money drawer; that thereupon the complaining witness caught his hand containing the money, and thereupon the struggle ensued. We cannot say from this statement that the defendant had obtained complete possession of the money before using violence to Jung Seung. It does not even appear that he had withdrawn his hand from the drawer.

1. Robbery of money from person, what is.

The fourth instruction of the court is, that to make out the offense of robbery, the money must have been obtained from the money drawer in the presence of Jung Seung, by means of force and violence to his person, and against his will, as charged. This would seem fairly to convey the idea, not merely that he must have carried the money away by force and violence, but that he must have obtained it from the money drawer where it was kept by the owner by force and violence. It cannot be contended that the defendant had obtained possession of the money before it was extracted from the money drawer.

Counsel criticises the use of the word "obtained" and claims that the word "taken," used in the statute, is the proper one for the court to have employed. The primary signification of "obtain," as given by Webster, is "to get hold of by effort; to gain possession of; to acquire." The idea conveyed by the word "taken," when used in this connection, is also to get possession of. We are unable to perceive any substantial shade of difference in the meaning of the two words, when used in this connec-

2. Instruction, construed— "taken."

tion.    The defendant could not take the money from the money drawer without obtaining it.    There is no intimation in the record that he obtained it in any other manner than by taking it.    If there were a question as to the existence of any intermediate agency between the defendant and the money drawer, through which he obtained possession of the money, there might be substance in the contention of the defendant, but the record suggests no such matter.    Nice questions may and do arise as to just when the possession of the owner of articles not attached to his person, but under his immediate charge and control, is divested, and it may well be doubted whether a thief can be said to have taken peaceable possession of money or other thing of value in the presence of the owner, when the taking is instantly resisted by the owner, before the thief is able to remove it from his premises or from his immediate presence.    But in this case we are not required to go to any extreme length, as the instructions given by the court seem to us to fairly require the jury to find that the defendant must have first gained possession of the money taken out from the money drawer by violence to the person of the prosecuting witness.    We think these views are abundantly sustained by the authorities. (Bish. New Cr. Law, § 1167; 2 Whar. Cr. Law, § 350; Rap. Larceny, § 446; *The State v. McCune*, 5 R. I. 60; 70 Am. Dec. 176; *Jackson v. The State*, 69 Ala. 249.

Under the facts as stated in the bill of exceptions, we think the court fairly stated the law to the jury, and the judgment is affirmed.

All the Justices concurring.